| | | |
|---|---|---|
| RON BURGET, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 2:14-CV-373-PRC |
| | ) | |
| R.A.M. ENTERTAINMENT, LLC and | ) | |
| MARK SENAK, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Dismiss [DE 20], filed by Defendant Mark Senak on December 8, 2014. The motion is fully briefed and ripe for ruling. The Court sua sponte raised the issue of subject matter jurisdiction, which is now also fully briefed by the parties.

## BACKGROUND

On October 13, 2014, Plaintiffs Ron Burget and Dos Amigos, LLC ("Dos Amigos") filed a Complaint against Defendants R.A.M. Entertainment Group, LLC ("RAM") and Mark Senak. Counts I through IV are brought by Burget against Defendants for breach of contract/promissory note (Count I), unjust enrichment (Count II), conversion (Count III), and fraud and misrepresentation (Count IV). Count V is brought by Burget and Dos Amigos, LLC for trademark infringement.

The Complaint makes the following allegations. RAM is a Nevada limited liability company. Burget is a Lake County, Indiana, resident. Dos Amigos, LLC is an Indiana LLC formed to do business as Tequila Restaurante. Senak is an Illinois resident. On June 3, 2014, Defendants RAM and Senak signed a promissory note whereby they would pay Burget $44,136.00 with interest at the rate of 4% annually with equal payments of $2,000.00 per month beginning August 1, 2014, until paid in full ("June 3, 2014 Promissory Note"). As of the filing of the Complaint, Defendants had not

made the payments for August 1, 2014, September 1, 2014, and October 1, 2014. Burget has made several demands for payment that have gone unanswered. Defendants encouraged Burget to provide the funds upon the presumption that Burget would be involved in the business, benefit from the business, be a participant in the business, and receive profit from the business.

Burget expended approximately $12,000.00 in travel expenses, money provided to Defendants, and other costs related to the start up of a restaurant venture in Las Vegas, Nevada. Senak was Burget's attorney. Senak encouraged and induced Burget to become partners in the restaurant venture and to contribute significant funds to the business. Meanwhile, Senak invested no funds although he made it appear in various documents as if he had. Senak created documents and schemes whereby Burget would be liable to other individuals for payment, including a March 13, 2014 promissory note for $65,000.00 to attorney Edward Sweeney, who is affiliated with Senak, while Senak had no liability or obligation ("Sweeney Promissory Note"). Sweeney made payment to Senak of $65,000.00, which Senak deposited into his personal bank account. Senak would then dispense money from his personal account to the RAM bank account at his discretion. None of the funds belonged to Senak. Senak did not make himself liable for these funds, and he did not guaranty these funds.

Senak represented to Burget that he would draft a partnership agreement and other documents whereby Burget would be a primary partner in a restaurant venture in Las Vegas, Nevada. Instead, Senak drafted the documents to represent himself as 96% partner, despite lack of financial contribution in order to disguise true investment percentages to the Nevada Gaming Commission for purposes of obtaining a gaming license. Thereafter, Burget was pushed out of the partnership but, in exchange, was to be paid the $44,136.00 via promissory note. Senak encouraged

Burget to invest and encouraged Burget to provide recipes, staffing, the restaurant concept, and even the restaurant name and methods of operation. While all of these items were provided by Burget, he has been ousted from the operation, while the operation continues to use the name, recipes, methods, and concepts created and utilized by Burget.

Senak represented to the landlord of the Las Vegas, Nevada, property that he was acting as attorney for Burget and another involved individual, while in actuality, he listed himself as 96% partner in the venture after the lease was signed and after Senak encouraged Burget to provide the security deposit and sign as guarantor.

Defendant Mark Senak filed the instant Motion to Dismiss on November 12, 2014, seeking dismissal of Counts I-IV of the Complaint. Plaintiffs filed a response in opposition on January 9, 2015.

On January 13, 2015, the parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On January 19, 2015, Senak filed a reply in support of the Motion to Dismiss.

On February 23, 2015, the Court ordered the parties to file a brief addressing specific questions the Court raised regarding the Court's subject matter jurisdiction. Plaintiffs filed their statement on March 10, 2015, Defendants filed a response on March 25, 2015, and Plaintiffs filed a reply on April 1, 2015.

Also in response to the Court's subject matter jurisdiction inquiry, Plaintiffs filed a Motion to Voluntarily Dismiss Count V of the Complaint. After the motion was fully briefed, the Court granted the motion on April 2, 2015, dismissing the claim of trademark infringement brought in

Count V by Burget and Dos Amigos, LLC. As Count V contained the only claims brought by Plaintiff Dos Amigos, LLC, Burget is the only remaining plaintiff in this litigation.

**SUBJECT MATTER JURISDICTION**

Based on the language in the Complaint's jurisdictional statement suggesting that Plaintiffs were asserting subject matter jurisdiction based only on diversity, the Court ordered Plaintiffs to clarify the membership of the limited liability company parties in this litigation, including the members of any member limited liability companies and to provide competent proof that the amount in controversy exceeds $75,000.00. The Court further ordered Plaintiffs to clarify whether the trademark infringement claims were brought under federal law and whether Plaintiffs were alleging that the Court has federal question jurisdiction.

As for the trademark infringement claims, without clarifying whether the claims were brought under federal or state law, Plaintiffs informed the Court that they would be seeking voluntary dismissal of Count V for trademark infringement, which they subsequently did.

As for the members of the limited liability companies, Plaintiffs offered evidence that, on the date of filing, the only member of Plaintiff Dos Amigos, LLC was Ronald Burget, whose residence is in Indiana. Plaintiffs also represent that the members of RAM Entertainment Group, LLC at the time the Complaint was filed were Mark Senak, an Illinois resident, and Harry Floros, a Nevada resident; Defendants do not dispute the membership of RAM Entertainment Group, LLC.

As for the amount in controversy, the claim in Count I for Breach of Contract/Promissory Note seeks recovery of $44,136.00. In Count III for conversion, Burget seeks return of the $44,136.00 as well as $12,000.00 in travel expenses, punitive damages, and attorney fees. And, in Count IV, Burget alleges that Defendants fraudulently created documents making Burget liable for

debts in excess of $65,000. Defendants do not dispute that the amount in controversy exceeds $75,000.00.

Accordingly, the Court finds that it has subject matter jurisdiction based on diversity jurisdiction.

## ANALYSIS

In the Motion to Dismiss, Defendant Mark Senak seeks dismissal of Counts I, II, III, and IV against him for failure to state a claim. A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on such a motion, the Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *see also Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint must first comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). Second, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570); *see also Tamayo*, 526 F.3d at 1082. The Supreme Court explained that the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555

(quotation marks and brackets omitted); *see also Iqbal*, 556 U.S. at 678-79; *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Determining whether a complaint states a plausible claim for relief requires the Court to draw on its judicial experience and common sense. *Iqbal*, 556 U.S. at 679.

Before turning to Senak's arguments, the Court addresses several preliminary matters. First, footnote 1 to both the motion and memorandum in support provides that Defendant RAM Entertainment, LLC ("RAM") "joins Defendant Senak's Motion to Dismiss Counts II, III, and IV of Plaintiff's Complaint, and adopts and incorporates by reference Sections II-IV of Defendant Senak's Memorandum in Support of his Motion to Dismiss as Defendant RAM's Memorandum in Support of its Motion to Dismiss." However, the motion and memorandum were filed by Attorney Mark Senak, who has not entered an appearance on behalf of Defendant RAM Entertainment, LLC, and, thus, cannot make filings on its behalf. Nevertheless, "'[a] court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related.'" *Chapman v. Vill. of Hinsdale*, No. 07 C 7232, 2008 WL 2940789, at *2 (N.D. Ind. July 25, 2008) (quoting *Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir. 1993)). And, Burget raises no objection to the assertion that RAM joins the motion. Finding that RAM is in a position similar to that of Senak on the relevant legal issues, the Court considers the Motion to Dismiss on Counts II, III, and IV as to RAM as well.

Second, both parties have attached documents to their briefs, all of which are considered by the Court in this ruling. To the Motion to Dismiss, Senak attached a copy of the Sweeney Promissory Note, which may be considered by the Court because it is referenced in the Complaint and is central to Burget's claims. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014);

*see* (Compl. ¶ 22). Burget also attached the same promissory note as Exhibit 4 to the response brief. Exhibit 3 to Burget's response brief, which is a "Listing of Capital Contributions and Members Interest–Schedule 1," is referenced in the Complaint. *See* (Compl. ¶ 23). Although Exhibits 1 and 2 to Burget's response are not specifically referenced in the Complaint, the Court considers them because the facts drawn from the exhibits are consistent with the allegations of the Complaint. *See Help at Home, Inc. v. Medical Capital, LLC*, 260 F.3d 748, 753-54 (7th Cir. 2001).

Third, because jurisdiction is premised on diversity of citizenship, the substantive rights of the parties are governed by state law. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Integrated Genomics, Inc. v. Gerngross*, 636 F.3d 853, 861 (7th Cir. 2011). In the motion, Senak acknowledges that the laws of Indiana and Nevada may be implicated but because of the lack of allegations in the Complaint as to where the events underlying the claims occurred, it is not clear which state's law applies. As a result, Senak applies Indiana law, and Burget does not object. Accordingly, the Court applies Indiana law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) ("'Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.'") (quoting *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991)); *ECHO, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995) (stating that, when neither party suggests that the law of a state other than the forum state ought to apply, the forum state's law applies by default); *Wood*, 942 F.2d at 426.

### A. Count I–Breach of Contract

Count I for breach of contract alleges that Defendants RAM and Senak signed the June 3, 2014 Promissory Note, failed to make the first three scheduled payments, and ignored several demands for payment by Burget. In the motion, Senak argues that the claim against him individually

should be dismissed because the June 3, 2014 Promissory Note unambiguously indicates that the debt was incurred on behalf of RAM and not by Senak individually.

Under the Indiana Business Flexibility Act, "[a] member, a manager, an agent, or an employee of a limited liability company is not personally liable for the debts, obligations, or liabilities of the limited liability company, whether arising in contract, tort, or otherwise, or for the acts or omissions of any other member, manager, agent, or employee of the limited liability company." Ind. Code § 23-18-3-3(a). "As a general rule, when the designation by a person's signature indicates that he is an officer or agent of an organization, without more, his status with respect to the document is that of a representative." *Grott v. Jim Barna Log Sys. Midwest, Inc.*, 794 N.E.2d 1098, 1104 (Ind. Ct. App. 2003) (citing *Rajski v. Tezich,* 514 N.E.2d 347, 349 (Ind. Ct. App. 1987), *trans. denied.*).

The June 3, 2014 Promissory Note provides that "RAM ENTERTAINMENT GROUP, LLC promises to pay to the order of RON BURGET" the sum of $44,136.00. Senak's signature is handwritten on the preprinted signature line. Above his signature is typed "R.A.M. Entertainment Group, LLC," and under his signature is typed "Mark N. Senak, Manager." There is no language in the document suggesting that Senak was incurring the debt in his individual capacity, and Senak's name is not mentioned in the body of the Promissory Note. Because the plain language of the June 3, 2014 Promissory Note indicates that Senak signed the note in his capacity as a manager of RAM and not as an individual, Senak's signature, without more, is insufficient to state a claim for breach of contract against Senak personally.

However, in his response brief, Burget argues that Senak signed the June 3, 2014 Promissory Note on behalf of RAM in order to obtain the money for himself and that Senak should be held

liable for the company's debt on a theory of piercing the corporate veil. Although individuals associated with a limited liability company are not personally liable merely because of their ownership in the entity, liability for the obligations of a limited liability company can fall on an individual member if he disregarded the "corporate form" so as to control or manipulate it as an instrumentality of his own, similar to piercing the corporate veil. *See CMG Worldwide, Inc. v. RALS-MM LLC*, No. 1:11-CV-719, 2012 WL 4514142, at *4 (S.D. Ind. Sept. 28, 2012) (citing *Ketchem v. Am. Acceptance, Co., LLC*, 641 F. Supp. 2d 782, 786 (N.D. Ind. 2008); *Troutwine Estates Dev. Co. LLC v. Comsub Design and Eng'g, Inc.*, 854 N.E.2d 890, 899 (Ind. Ct. App. 2006)); *MFP Eagle Highlands, LLC v. Am. Health Network of Ind., LLC*, No. 1:07CV424, 2009 WL 77679, at *9 (S.D. Ind. Jan. 9, 2009); *see also U.S. Schs. of Golf, Inc. v. Biltmore Golf, Inc.*, 2005 WL 3022005, at *10 (S.D. Ind. Nov. 10, 2005) (finding that no set of facts could support a breach of contract claim against the majority owner of the company in his personal capacity and that the plaintiff had not argued a theory of piercing the corporate veil as an exception to the general rule that corporate officers are not liable for the contractual obligations of the corporation).

There are eight practices that most often result in a court deciding to disregard the corporate form:

> (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud, injustice or illegal activities; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form.

*JMB Mfg., Inc. v. Child Craft, LLC*, 939 F. Supp. 2d 909, 918-19 (S.D. Ind. 2013) (quoting *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994)). The "moving party must show a causal connection

between misuse of the corporate form and the harm suffered by the movant." *Id.* (citing *CBR Event Decorators, Inc. v. Gates*, 962 N.E.2d 1276, 1282 (Ind. Ct. App. 2012)).

In support of the piercing the corporate veil theory, Burget cites Paragraphs 20-26 and 28-33 of the Complaint. Paragraphs 28-33, which are the claim for trademark infringement, have been dismissed; moreover, nothing in those paragraphs relates to the theory of piercing the corporate veil. In contrast, Paragraphs 20-26 are contained within the claim in Count V for fraud, which is based in part on Senak allegedly inducing Burget to sign and personally guaranty the Sweeney Promissory Note for $65,000.00. The Sweeney Promissory Note was signed by Burget and Floros personally and by Senak on behalf of RAM. Burget alleges that Senak did not keep his personal finances and company finances separate. Specifically, Burget alleges that Senak deposited the $65,000.00 payment from Sweeney into Senak's personal bank account and that Senak then distributed the money from his personal bank account to the RAM bank account at Senak's discretion. (Compl. ¶ 22). Burget also alleges in these paragraphs that, instead of drafting a partnership agreement whereby Burget would be a primary partner in the restaurant venture as Senak said he would, Senak instead drafted documents to represent himself as 96% partner without any personal financial contribution. (Compl. ¶ 23).

In addition, Burget alleges in his response brief that Senak used the $44,136.00 from the June 3, 2014 Promissory Note to fund his own investment contribution in RAM. Burget shows that, on October 28, 2013, he paid Senak a $2500 retainer to represent Burget's interests in negotiations concerning the Las Vegas, Nevada, location for the restaurant. Burget alleges that, instead of representing Burget's interests, Senak allegedly took Burget's capital contribution and used it as his own. In the original "Listing of Capital Contributions and Members Interest–Schedule 1" that has

a fax date stamp of April 7, 2014, Senak listed himself as having made a $39,000.00 financial contribution, with Burget having made a contribution of $46,000.00 and Floros having made a contribution of $21,000.00, and Senak listed himself with 92% ownership and Burget and Floros each with 4% ownership. (Pl. Resp. Ex. 2). On a subsequent version of the same Schedule 1, with a fax date stamp of April 24, 2014, Senak listed his own contribution as $85,000.00 with 96% ownership and Floros' contribution as $21,000.00 with 4% ownership; Burget is not included on the updated Schedule 1. *Id.* at Ex. 3.[1]

Burget notes that Senak's alleged original contribution of $39,000.00, coupled with the $46,000.00 Burget originally invested, which Burget indicates was in part from the $44,136.00 Promissory note, totals the $85,000.00 that Senak lists himself as contributing on the updated Schedule 1. Burget alleges that Senak took Burget's contribution from the June 3, 2014 Promissory Note and combined it with Senak's own contribution to represent that Senak personally contributed $85,000.00. Thus, Burget alleges that the loan was not to RAM but really to Senak so that he could appear to be a 96% owner of RAM and the restaurant. And, Burget again alleges in his brief that Senak did not make any personal financial contribution to the business.

Thus, Burget argues that Senak did not keep the company finances separate from his own such that RAM was nothing more than a sham operation for Senak's own actions. As a result, Burget alleges that, because Senak took Burget's investment made through the June 3, 2014 Promissory Note, Senak now personally owes Burget the money due on the Note.

In his reply brief, Senak does not contend that these allegations do not support a theory of piercing the corporate veil in relation to the $44,136.00 Promissory Note. Rather, he argues that a

---

[1] It is unclear which of these forms, if either, or both, was filed with the appropriate government agency.

court will not pierce the corporate veil unless there is an underlying claim and that a judgment against RAM must be obtained before Senak can be liable. At this stage of the litigation, it is sufficient that Burget has pleaded the underlying breach of contract claim against RAM and that Burget has alleged sufficient facts to assert a plausible theory of liability based on piercing the corporate veil to hold Senak personally liable for that breach of contract. Burget need not prove his claim at this stage, nor does the Court resolve issues of fact at this stage. Moreover, a judgment is not necessary for Burget to bring allegations seeking to pierce the corporate veil. *See Reed v. Reid*, 980 N.E.2d 277 (Ind. 2012).

Accordingly, the Court denies the Motion to Dismiss Count I as to Defendant Senak. The Court recognizes that dismissal of Count I against RAM was not sought. Thus, Count I remains pending as to both Defendants.

## B. Count II–Unjust Enrichment

In Count II, Burget alleges that Defendants have been unjustly enriched by retaining "Burget's funds" to his detriment. This claim is based solely on the $44,136.00 loaned by Burget pursuant to the June 3, 2014 Promissory Note. Senak seeks dismissal of the claim for unjust enrichment on the basis that an express contract governs Burget's right of recovery and because there is no allegation that Senak personally received or retained any money from Burget.

To prevail on a claim of unjust enrichment, "'a plaintiff must establish that a measurable benefit has been conferred on the defendant under such circumstances that the defendant's retention of the benefit without payment would be unjust.'" *Woodruff v. Indiana Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 791 (Ind. 2012) (quoting *Bayh v. Sonnenburg*, 573 N.E.2d 398, 408 (Ind. 1991)); *see also Reed*, 980 N.E.2d at 296. "Indiana courts articulate three elements for these claims: (1) a

benefit conferred upon another at the express or implied request of this other party; (2) allowing the other party to retain the benefit without restitution would be unjust; and (3) the plaintiff expected payment." *Woodruff*, 964 N.E.2d at 791 (citing *Kelly v. Levandoski*, 825 N.E.2d 850, 861 (Ind. Ct. App. 2005), *trans. denied*.).

However, "[w]hen the rights of parties are controlled by an express contract, recovery cannot be based on a theory implied in law." *Zoeller v. East Chicago Second Century Inc.*, 904 N.E.2d 213, 220 (Ind. 2009) (quoting *Keystone Carbon Co. v. Black*, 599 N.E.2d 213, 216 (Ind. Ct. App. 1992)). This is because "[t]he existence of express terms in a valid contract precludes the substitution of and the implication in law of terms regarding the subject matter covered by the express terms of the contract." *Zoeller*, 904 N.E.2d at 220 (quoting *Keystone*, 599 N.E.2d at 216); *see also Woodruff*, 964 N.E.2d at 791-92.

First, Burget has failed to state a claim for unjust enrichment against RAM because the express language of the June 3, 2014 Promissory Note controls the rights of Burget and RAM. Thus, a claim of unjust enrichment against RAM is precluded and the Court dismisses the claim for unjust enrichment against Defendant RAM in Count II. *See Desert Buy Palm Springs, Inc. v. DirectBuy, Inc.*, 2:11-CV-132, 2012 WL 2130558, at *5 (N.D. Ind. June 12, 2012) (dismissing claims for unjust enrichment because the complaint alleged that a valid and enforceable contract governed the parties' rights); *CoMentis, Inc. v. Purdue Research Found.*, 765 F. Supp. 2d 1092, 1102-03 (N.D. Ind. 2011) (same).

In contrast, Senak is not a party to the June 3, 2014 Promissory Note, and, thus, the express contract does not cover the rights between Burget and Senak. *See Zoeller*, 904 N.E.2d at 220. Nevertheless, Burget has not alleged that he conferred any benefit on Senak. The only benefit

conferred by Burget was the $44,136.00 he loaned to RAM under the Promissory Note; he did not

give this money to Senak personally. Nor did Senak expressly or impliedly request the $44,136.00

on behalf of himself; the money was requested on behalf of RAM. Finally, there is no allegation that

Burget expected payment of the $44,136.00 from Senak; the terms of the June 3, 2014 Promissory

Note dictate that payment would be made by RAM. Although Burget alleges that Senak, and not

RAM, ultimately retained the benefit of the money when Senak used Burget's money as part of his

own capital contribution to RAM, Senak did not receive the money from Burget. Thus, Burget has

failed to state a claim against Senak for unjust enrichment.

The Court grants the Motion to Dismiss the claim for unjust enrichment in Count II as to

both Defendant Senak and Defendant RAM.

### C. Count III–Conversion

In Count III, Burget alleges civil conversion of the $44,136.00 loaned through the June 3,

2014 Promissory Note and as well as approximately $12,000 in travel expenses and costs related to

the start-up of the business paid by Burget and "other monies provided to Defendants" by Burget.

Burget alleges that Defendants have exerted unauthorized control over funds belonging to Burget,

without justification. Senak moves to dismiss the claim on the basis that Burget does not allege that

Senak or RAM appropriated or exercised control over a specific chattel or determinate sum with

which Senak or RAM was entrusted to apply for a certain purpose. In addition, Senak argues that

there is no allegation that Senak appropriated any of Burget's money for his own personal benefit

and use.

The tort of civil conversion "is the appropriation of the personal property of another to the

party's own use and benefit, or in its destruction, or in exercising dominion over it, in exclusion and

defiance of the rights of the owner or lawful possessor, or in withholding it from his possession, under a claim and title inconsistent with the owner's." *Schrenker v. State*, 919 N.E.2d 1188, 1194 (Ind. Ct. App. 2010) (citing *Computers Unlimited, Inc. v. Midwest Data Sys., Inc.*, 657 N.E.2d 165, 171 (Ind. Ct. App. 1995)); *see also Yoder Feed Serv. v. Allied Pullets, Inc.*, 359 N.E.2d 602, 604 (Ind. Ct. App. 1977).

By statute, a plaintiff who has suffered a pecuniary loss as a result of criminal conversion is entitled to bring a civil conversion claim under § 34-24-3-1 and seek recovery of up to three times the actual damages, the costs of the action, and attorney fees, all of which Burget seeks in his Complaint. Ind. Code § 34-24-3-1; *see also IP of W. 86th St. 1, LLC v. Morgan Stanley Mortg. Capital Holdings, LLC*, 686 F.3d 361, 370 (7th Cir. 2012); *Riley v. Sandlin*, 13 N.E.3d 951, 2014 WL 2582934, at *3 (Ind. Ct. App. June 10, 2014). Indiana's criminal conversion statute provides that a "person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion." Ind. Code § 35-43-4-3(a). To prevail on a civil conversion claim, the plaintiff must prove the elements of the criminal conversion claim by a preponderance of the evidence. *IP of W. 86th St. 1*, 686 F.3d at 370.

However, "the failure to pay a debt does not constitute criminal conversion as a matter of law." *Old Nat'l Bank v. Kelly*, 31 N.E.3d 522, 532 (Ind. Ct. App. 2015) (citing *Tobin v. Ruman*, 819 N.E.2d 78, 89 (Ind. Ct. App. 2004)); *see also Bowden v. Agnew*, 2 N.E.3d 743, 750-51 (Ind. Ct. App. 2014). Moreover, "money may be the subject of an action for conversion only if it is capable of being identified as a special chattel." *Bowden*, 2 N.E.3d at 750 (citing *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 836 (Ind. Ct. App. 1995), *abrogated on other grounds by St. Vincent Hosp. & Health Care Ctr., Inc.*, 766 N.E.2d 699 (Ind. 2002)). The money must be "'a determinate sum with which

the defendant was entrusted to apply to a certain purpose.'" *Id.* (quoting *Trietsch v. Circle Design Grp., Inc.*, 868 N.E.2d 812, 821-22 (Ind. Ct. App. 2007)); *see also Tobin*, 819 N.E.2d at 89.

First, as to the $12,000 for travel expenses and start up costs, the Complaint alleges that Burget "expended" those funds. *See* (Compl. ¶ 16). There is no allegation that this money was paid to Senak or to RAM or that Senak or RAM wrongfully exerted control over the money. As for the "other monies provided to Defendants," there are no allegations to support a plausible claim for conversion, such as how much money was provided, whether it was provided to Senak personally or to RAM, or what the money was used for. Moreover, there is no allegation that Burget had any expectation of repayment of the specific money that was allegedly converted or that the allegedly converted monies were held in a separate escrow account or segregated trust fund. *See Huff*, 654 N.E.2d at 836 (citing *Kopis v.Savage*, 498 N.E.2d 1266, 1270 (Ind. Ct. App. 1986); *Stevens v. Butler*, 639 N.E.2d 662, 666 (Ind. Ct. App. 1994); *Excel Indus. Inc. v. Signal Capital Corp.*, 574 N.E.2d 946, 948 (Ind. Ct. App. 1991); *National Fleet Supply, Inc. v. Fairchild*, 450 N.E.2d 1015, 1019 (Ind. Ct. App. 1983); *Midland-Guardian Co. v. United Consumers Club Inc.*, 502 N.E.2d 1354, 1355 (Ind. Ct. App. 1987)). Thus, Burget has failed to state a claim for conversion based on the $12,000 in travel expenses and costs expended and on the "other monies provided to Defendants."

As for the $44,136.00 loaned through the June 3, 2014 Promissory Note, Burget entered into a contractual relationship with RAM for the repayment of the $44,136.00. Thus, the failure to repay this debt cannot support an action for conversion against RAM. As for Senak, Burget loaned the money to RAM, not Senak. Therefore, because the $44,136.00 was not Burget's when Senak allegedly took the money for his use, Senak did not take Burget's property. In addition, the Promissory Note does not require the return of the specific $44,136.00 Burget gave RAM but rather

money in that same amount. There is no allegation that RAM or Senak retained specific funds that could be directly attributed to Burget or that the allegedly converted monies were held in a separate escrow account or segregated trust fund. Accordingly, Burget has failed to state a claim for conversion against RAM based on the $44,136.00.

The Court grants the Motion to Dismiss the claim of conversion in Count III as to both Defendant Senak and Defendant RAM.

Finally, Burget's request for leave to amend the complaint to add a claim of conversion based on the $2,500.00 Burget paid Senak in attorney fees is not properly before the Court in Burget's response brief. Any request to amend the complaint based on new allegations must be brought by separate motion.

### D. Count IV–Fraud and Misrepresentation

In Count IV, Burget alleges that, as his attorney, Senak had a duty to represent and protect the best interests of Burget but instead violated that duty by entering into a business arrangement with Burget. (Compl. ¶ 20). Burget alleges that Senak "encouraged and induced Burget to become partners in a restaurant venture in Las Vegas, Nevada, and to contribute significant funds to the venture" without himself investing any funds. *Id*. ¶ 21. Burget alleges that Senak created the Sweeney Promissory Note for $65,000.00, on which Burget is personally liable but Senak is not, deposited the $65,000.00 in his personal bank account, and then distributed money to the RAM bank account at Senak's discretion. *Id*. ¶ 22. Burget alleges that Senak represented to Burget "that he would draft a partnership agreement and other documents whereby [Burget] would be a primary partner in the venture in Las Vegas, Nevada" but instead drafted the documents to represent Senak as a 96% partner and then pushed Burget out of the business. *Id*. ¶ 23.

Burget alleges that Senak "encouraged" him to invest in the restaurant and to provide recipes, staffing, the concept, the restaurant name, and the methods of operation. *Id*. ¶ 24. Burget alleges that, based on the "encouragement and inducement" of Senak and RAM, Burget provided the $44,136.00 pursuant to the June 3, 2014 Promissory Note and expended $12,000.00 in travel expenses and other monies. *Id*. ¶ 25. Burget also alleges certain representations that Senak made to the landlord of the Las Vegas property regarding Senak's role as attorney and the percentage ownership in the venture. *Id*.

Thus, Burget alleges that Senak "fraudulently misrepresented or purposely concealed relevant facts knowing they were false and that he was concealing other facts, with the intention that Burget would rely on these facts or representations." *Id.* ¶ 26. These facts included the purpose of the funds from Burget, the level of involvement Burget would have, the fact that Senak would draft the agreement so that Burget would only be a 4% owner, and that Burget would essentially be ousted from the venture without compensation. *Id*. Burget alleges that he trusted and relied on Senak and was damaged as a result. *Id*.

In the motion, Senak seeks dismissal of Burget's claim of "Fraud and Misrepresentation" in Count IV on the basis that Burget has not satisfied the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), the fraud claim cannot be based on statements of future conduct, and the fraud claim cannot be based on statements made to a third party and not to Burget. In response, Burget contends that he has stated a claim for constructive fraud rather than actual fraud.

"Constructive fraud arises by operation of law from a course of conduct, which, if sanctioned by law, would secure an unconscionable advantage, irrespective of the actual intent to defraud." *In*

*re Rueth Dev. Co.*, 976 N.E.2d 42, 52 (Ind. Ct. App. 2012) (citing *In re Bender*, 844 N.E.2d 170, 182

(Ind. Ct. App. 2006)). The elements of constructive fraud are:

> 1) a duty owing by the party to be charged to the complaining party due to their relationship; 2) violation of that duty by the making of deceptive material misrepresentations of past or existing facts, or by remaining silent when a duty to speak exists; 3) reliance thereon by the complaining party; 4) injury to the complaining party as a proximate result thereof; and 5) the gaining of an advantage by the party to be charged at the expense of the complaining party.

*Precision Cam, Inc. v. Fox & Fox*, No. 1:14-CV-452, 2015 WL 803552, at *8 (S.D. Ind. Feb. 24,

2015) (quoting *Tipton v. Isaacs*, No. 49A05-1311-CT-541, 2014 WL 4384102, at *5 (Ind. Ct. App.

Sept. 5, 2014)).

Burget satisfies the first element because Senak owed him a fiduciary duty as his attorney.

*Lucas v. Frazee*, 471 N.E.2d 1163, 1166–1167 (Ind. Ct. App. 1984). However, as to the second

element, the pleading requirements of Federal Rule of Civil Procedure 9(b) apply to a constructive

fraud claim. *See Precision Cam.*, 2015 WL 803552, at *8; *Gen. Elec. Capital Corp. v. Lease

Resolution Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997). Particularity for purposes of Rule 9(b)

means that a plaintiff must allege "the identity of the person who made the misrepresentation, the

time, place and content of the misrepresentation, and the method by which the misrepresentation was

communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin.

Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008); *see also Pirelli Armstrong Tire Corp. Retiree Med.

Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441-42 (7th Cir. 2011) (recognizing that a plaintiff must

ordinarily "describe the who, what, when, where, and how of the fraud" but that the requisite

information may vary on the facts of a given case). The allegations necessary to satisfy Rule 9(b)

must be in the complaint itself and cannot be supplemented by the response brief. *Kennedy v.

Venrock Assocs.*, 348 F.3d 584, 593 (7th Cir. 2003).

Burget fails to make the requisite allegations to meet the standard of Rule 9(b). Although Burget alleges that Senak is the "who," Burget does not allege "when" the allegedly fraudulent statements were made, "what" specific statements were made, "where" the statements were made, or "how" they were made. Burget's allegations regarding Senak's statements are general, stating that Senak "encouraged and induced" Burget "to become partners in the restaurant venture," "to invest in the venture," and "to provide recipes, staffing, restaurant concept and even the restaurant name and method of operations." (Compl. ¶ 21, 23, 24, 25). Nowhere in the Complaint does Burget explain what specific statements Senak made to "encourage and induce" Burget to perform tasks or when, where, or how the statements were made. As for the allegations in Paragraph 23 regarding Senak's representations about the contents of the partnership agreement, Burget does not allege when or where these statements were made. These facts, especially the timing, are necessary in order to show Burget's reliance. Rule 9(b) requires more. Although the allegations must be made in the Complaint, the Court notes that Burget does not make any effort to offer the necessary details in his response brief much less seek leave to amend to plead them. The motion to dismiss the constructive fraud claim in Count IV based on these statements is granted for failure to state a claim under the heightened pleading standard of Rule 9(b).[2]

---

[2] In the initial Motion to Dismiss premised on what appeared to be a claim of actual fraud, Senak correctly notes that most of the descriptions of Senak's alleged statements describe promises of future conduct. In Paragraph 23, Burget alleges that "Senak represented to [Burget] that he *would* draft a partnership agreement and other documents whereby [Burget] *would* be the primary partner in the restaurant venture." (Compl. ¶ 23) (emphasis added). In Paragraph 26, Burget alleges that Senak misrepresented or concealed facts regarding "the level of involvement Burget *would* have, the fact that he *would* draft the agreement so that Burget would only be 4% owner, and that Burget *would* essentially be ousted from the venture without compensation." *Id.* ¶ 26 (emphasis added). Senak sought dismissal, in part, on the ground that a claim of fraud may not be based on representations of future conduct. "However, representations as to future conduct may, in some situations, give rise to a constructive fraud . . . . and particularly so when a fiduciary relationship or duty is implicated." *Yeager v. McManama*, 874 N.E.2d 629, 637 (Ind. Ct. App. 2007) (citing *In re Estates of Kalwitz v. Kalwitz*, 717 N.E.2d 904, 912 (Ind. Ct. App. 1999); *Orem v. Ivy Tech State College*, 711 N.E.2d 864, 868-69 n. 5 (Ind. Ct. App. 1999), *trans. denied*; *Morfin v. Estate of Martinez*, 831 N.E.2d 791 (Ind. Ct. App. 2005); *Paulson v. Centier Bank*, 704 N.E.2d 482, 490 (Ind. Ct. App. 1998)); *Strong v. Jackson*, 777 N.E.2d 1141, 1149 (Ind. Ct. App. 2002). Because dismissal of this claim based on these allegations is granted based on Burget's failure to plead his fraud

As for the allegations in paragraph 22 of the Complaint regarding the Sweeney Promissory Note, Burget does not allege that Senak made any misrepresentations but rather that Senak failed to speak when he had a duty to do so as Burget's attorney. However, Burget does not explain what duty Senak had to tell Burget that Senak was not personally liable on the Sweeney Promissory Note. Burget does not allege that he believed that Senak was also personally liable on the Sweeney Promissory Note at the time Burget signed the Note, nor does Burget allege that he signed the Note based on a belief that Senak was also personally liable on the Note.

Moreover, Burget cannot allege that he relied on Senak's silence when the express terms of the Sweeney Promissory Note provide that Burget, Floros, and RAM are liable for the Note and nowhere provide that Senak is liable. "'To demonstrate reasonable reliance, the [P]laintiff must show not only that he in fact relied on the misrepresentations, but also that he had a right to rely on them.'" *Butner v. Sec. Life of Denver Life Ins. Co.*, No. 4:12-CV-36, 2012 WL 3065733, at *4 (S.D. Ind. July 27, 2012) (quoting *McWaters v. Parker*, 995 F.2d 1366, 1372 (7th Cir. 1993) (applying Indiana law on constructive fraud)); *Dean V. Kruse Found., Inc. v. Gates*, 932 N.E.2d 763, 768 (Ind. Ct. App. 2010). "The traditional rule is that an injured party has no right to rely upon representations where he or she fails or neglects to read the available written instrument." *Butner*, 2012 WL 3065733, at *4 (citing *Plohg v. NN Investors Life Ins. Co., Inc.*, 583 N.E.2d 1233, 1237 (Ind. Ct. App. 1992)).

The opening paragraph of the Sweeney Promissory Note provides:

FOR VALUE RECEIVED, R.A.M. Entertainment Group, L.L.C., a Nevada limited liability company (hereinafter the "Company"), Ronald S. Burget (hereinafter

claim with sufficient particularity and because the parties have not briefed the issue of whether the representations of future conduct in this case might support a claim for constructive fraud in light of the parties' fiduciary relationship, it is unnecessary for the Court to decide the issue on the current motion.

"Burget"), and Harry A. Floros (hereinafter "Floros"), individually and jointly, (the Company, Burget, and Floros hereinafter collectively referred to as "Payors") promise to pay Edmund Sweeney (the "Payee"), the principal sum of $65,000 (the "Principal Amount") . . . .

(Pl. Resp. Ex. 4). Although Senak and Burget had a fiduciary relationship, there are no allegations in the Complaint that Senak told Burget that Senak would be personally liable on the Sweeney Promissory Note, that Senak made any other verbal statements, much less misrepresentations, regarding individual liability on the Sweeney Promissory Note, or that Senak conducted himself in a way such that Burget was induced not to read the Promissory Note before signing it. Nor does Burget allege that he did not read the Promissory Note. The allegations of constructive fraud surrounding the Sweeney Promissory Note are based solely on Senak's silence. Accordingly, the allegations in Paragraph 22 also fail to state a claim for constructive fraud because Burget has not alleged reliance.

Finally, the allegations in Paragraph 25 related to the representations made to the landlord of the property in Nevada cannot form the basis of Burget's constructive fraud claim because Burget has not alleged that he relied on the statement made to the landlord. *Dow v. Howe Military Sch.*, 227 F.3d 981, 990 (7th Cir. 2000) (dismissing the plaintiff's fraud claim under Indiana law because there was no evidence that defendants misrepresented any facts to the plaintiff).

For the foregoing reasons, the Court grants the Motion to Dismiss the claim of constructive fraud in Count IV as to both Defendant Senak and Defendant RAM. In addition to the deficiencies discussed above, the Court notes that Burget has abandoned his actual fraud claim and that he makes no allegations of constructive fraud specifically against Defendant RAM in his response brief.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS in part** and **DENIES in part** the Motion to Dismiss [DE 20], and **DISMISSES without prejudice** Count II (unjust enrichment), Count III (conversion), and Count IV (fraud) against both Defendant Mark Senak and Defendant RAM Entertainment Group, LLC for a failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Count I remains pending against both Defendants.

SO ORDERED this 23rd day of July, 2015.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT